IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| TIFFANY JAMES, an individual.<br><br>      Plaintiff,<br><br>v.<br><br>WEST VALLEY CITY, a political subdivision of the State of Utah,<br><br>      Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [18] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:16-cv-00752-DN<br><br>District Judge David Nuffer |

  Plaintiff Tiffany James ("Ms. James") worked as a full time cook at Defendant West Valley City's Ridge Golf Course (the "Ridge") from November 2014 until June 2015. In April and June of 2015, Ms. James made requests to take leave from work as permitted under the Family Medical Leave Act ("FMLA"). Subsequent to her second request, Ms. James's employment with West Valley City was terminated.

  Ms. James's Complaint[1] alleges that West Valley City violated the FMLA by interfering with her rights and by retaliating against her for attempting to exercise those rights. West Valley City moves for summary judgment on both of those claims.[2] Ms. James responded.[3] West Valley City replied in support.[4]

---

[1] Docket no. 1, filed July 1, 2016.

[2] West Valley City's Motion for Summary Judgment ("Motion"), docket no. 18, filed December 8, 2017.

[3] Opposition to Defendant's Motion for Summary Judgment ("Opposition"), docket no. 22, filed January 15, 2018.

[4] Reply Memorandum in Support of West Valley City's Motion for Summary Judgment ("Reply"), docket no. 28, filed February 8, 2018.

West Valley City's motion for summary judgment is GRANTED because the undisputed facts do not show that West Valley City interfered with, or retaliated against, Ms. James's attempts to seek qualifying leave under the FMLA.

**Contents**
SUMMARY JUDGMENT STANDARD ................................................................................ 2
UNDISPUTED MATERIAL FACTS .................................................................................... 3
DISCUSSION ........................................................................................................................ 10
    1.    West Valley City Did Not Interfere With Ms. James's Request for Family Medical Leave ................................................................................................... 12
        A.    Ms. James has not shown that she was prejudiced by the actions of West Valley City regarding her April 2015 request for FMLA leave. .............. 13
        B.    Ms. James has not shown that the termination of her employment was related to her FMLA request and West Valley City has shown that she would have been terminated regardless of that request. ........................... 15
    2.    Ms. James Fails to Make a Prima Facie Case that West Valley City Retaliated Against Her for Requesting Family Medical Leave. ........................................... 17
ORDER .................................................................................................................................. 20

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] A material fact is a fact that "might affect the outcome of the suit under the governing [substantive] law."[6] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[7] In determining whether there is a genuine dispute of material fact, the court should "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant."[8]

---

[5] Fed. R. Civ. P. 56(a).

[6] *Bird v. W. Valley City*, 832 F.3d 1188, 1199 (10th Cir. 2016) (internal citation omitted).

[7] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[8] *Id.*

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[9] "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial."[10]

If the nonmoving party "bears the burden of persuasion of a claim at trial," such as in this case, "the nonmoving party [remains] entitled to all reasonable inferences from the record; but . . . summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue."[11]

## UNDISPUTED MATERIAL FACTS[12]

1. In or around November 2014, West Valley City hired Ms. James as a full-time cook at the Ridge with benefits.[13]

2. As a newly hired, benefitted employee, Ms. James was a probationary at-will employee for the next year and could be terminated by the department head with or without

---

[9] *Id.* at 670-71.

[10] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 971 (10th Cir. 2002).

[11] *Water Pik, Inc. v. Med-Sys., Inc.*, 726 F.3d 1136, 1143–44 (10th Cir. 2013).

[12] The parties' briefing includes several purported undisputed material facts that are not included here because they are not material to the resolution of the Motion, not supported by the evidence, or are argument and not facts. Ms. James also objected to a number of those purported undisputed facts. Because those facts are not material to resolving the Motion, and are not included here, the resolution of Ms. James's objections to those facts is unnecessary.

[13] Motion at 3 ¶ 3 (undisputed).

cause at any time during the probationary period after consultation with the Human Resource Office and the City Attorney's Office, and with final approval from the City Manager.[14]

3. Ms. James's son has stage three chronic renal kidney failure. The condition is chronic and progressive. The only cure is a kidney transplant.[15]

4. Charisse Pierce ("Ms. Pierce"), the Ridge's on-site manager and one of Ms. James's supervisors, testified that Plaintiff began having performance issues immediately after being hired as a full-time cook.[16]

5. Two days after Ms. James had been hired as a full-time cook, she sold alcohol to a minor and was subsequently disciplined.[17]

6. Mr. Jeremy Erkkila ("Mr. Erkkila"), the manager over food and beverage at the Ridge, and another one of Ms. James's supervisors, testified that certain members of the West Valley City Administration wanted to fire Ms. James for selling alcohol to a minor.[18]

7. Mr. Erkkila decided not to terminate Ms. James at that time and gave her a second chance.[19]

8. On December 30, 2014, Mr. Erkkila, Ms. Pierce, and Ms. James had a meeting to discuss having Ms. James work enough hours to build up her paid time off "PTO" hours during

---

[14] Motion at 3 ¶ 4; Opposition at 5 ¶ 4 (undisputed that Ms. James was a probationary at-will employee, providing the additional policy language regarding the department head and required consultation); Reply at 5 ¶4 (West Valley does not dispute this policy language).

[15] Opposition at 24 ¶ 2 (undisputed).

[16] Motion at 3 ¶ 5; Opposition at 5 ¶ 5 (clarifying the job title and supervisory authority of Ms. Pierce); Reply at 5–6 ¶ 5 (West Valley City does not dispute the title or authority of Ms. Pierce.).

[17] Motion at 4 ¶ 7 (undisputed).

[18] Motion at 4 ¶10 (Mr. Erkkila's job title and the desire of city administration members to terminate Ms. James are undisputed); Opposition at 5 ¶ 5 (clarifying the supervisory authority of Mr. Erkkila); Reply at 5–6 ¶ 5 (West Valley City does not dispute this authority).

[19] Motion at 4 ¶10 (undisputed).

4

the slower winter months. These PTO hours would be used to make up for any periods when the Ridge did not have enough work for its employees to work a 40 hour workweek.[20]

9. According to Mr. Erkkila, this meeting was held because Ms. James had been taking a lot of time off, which raised a red flag for Mr. Erkkila.[21]

10. In February or March 2015, Mr. Erkkila had a discussion with Aimee Tye-Critchley ("Ms. Tye-Critchley"), West Valley City's HR Director, about potentially terminating Ms. James's employment with West Valley City because of her performance problems.[22]

11. On April 8, 2015, Ms. James sent a text message to Ms. Pierce informing Ms. Pierce that Ms. James's son was in the hospital with a kidney infection but that Ms. James expected her son to leave the hospital the next morning.[23]

12. On April 9, 2015, Ms. James sent a text message to Ms. Pierce at 6:32 p.m. indicating that Ms. James's son might not be discharged from the hospital that day because "[h]is fever is still spiking to 104" and he "could easily turn septic." Ms. James also wrote that "[a] parent or legal guardian must remain with child the entire time of stay in order to make legal decisions on surgeries etc. I have to be here with my son at least until he is home safe. Or until [Ms. James's husband] gets home."[24]

---

[20] Motion at 5 ¶ 11; Reply at 8–9 ¶ 11 (Ms. James does not dispute that this meeting was held, and the additional, immaterial evidence she cites does not create a genuine dispute of fact.).

[21] *Id.*

[22] Motion at 6 ¶15; Opposition at 10–11 ¶ 15 (Response fails to create a dispute because it is either unsupported by citation to evidence or by citation to evidence that does not create a dispute.).

[23] Opposition at 24 ¶ 3 (undisputed).

[24] Opposition at 25 ¶ 4 (undisputed).

13. Ten minutes later, at 6:42 p.m., Ms. Pierce responded to Ms. James with a text message saying: "You might want to have a serious talk with [Ms. James's husband] that he should mark off when it is actually important. You treat your job as if it is disposable."[25]

14. On April 11, 2015, Ms. Pierce sent an email to Mr. Erkkila stating that she had talked to Ms. James about being tired of having to pick up the slack when Ms. James decided not to fulfill her job duties.[26]

15. On April 16, 2015, Ms. James made a request to get documentation she needed to apply for FMLA leave from Darlene Jore ("Ms. Jore") in the West Valley City HR Department because her son was having medical issues.[27]

16. Ms. James testified that she received part of the FMLA application paperwork as it was mailed to her current address, but also testified that the remainder of the application paperwork was mailed to an old address and was then forwarded to her current address. By the time Ms. James received the remainder of the FMLA application paperwork, she did not have enough time to complete it in the required timeframe.[28]

17. Ms. James did not complete the FMLA application paperwork and on May 5, 2015, Ms. Jore drafted a letter denying Ms. James's application that her absence from work be

---

[25] Opposition at 26 ¶ 5 (undisputed).

[26] Motion at 12 ¶ 18a (undisputed).

[27] Motion at 13 ¶ 20 (undisputed).

[28] Opposition at 14–15 ¶ 20; Reply at 13–14 ¶ 20 (West Valley City argues in its Reply that this testimony is "self-serving" and takes issue with this fact because Ms. James has never supplied documentation showing that the application paperwork was sent to the wrong address and forwarded. West Valley City also attempts to create a dispute with citation to deposition testimony of Ms. Tye-Crtichley that Ms. Jore hand-delivered the application paperwork to Ms. James. However, the deposition testimony of Ms. Tye-Critchley reveals that it is unclear just how the paperwork was delivered. West Valley City's citation therefore does not create a dispute of fact. In viewing the supplied facts in a light most favorable to Ms. James, her testimony is included here as an undisputed material fact.).

designated as family medical leave. The letter was sent on May 7, and Ms. James received the letter on May 9, 2015.[29]

18. In April 2015, Mr. Erkkila spoke with Ms. Jore about wanting to terminate Ms. James's employment, but Ms. Jore indicated that any decision regarding termination had to be postponed because of Ms. James's request for FMLA leave. Mr. Erkkila agreed and postponed the termination.[30]

19. A few days after Ms. James received the letter denying her application for FMLA leave, Ms. James spoke with Ms. Jore, who stated that Ms. James had ample leave time to use and that, since Ms. James's son was out of the hospital at that time, Ms. James could reapply for FMLA when there was another hospitalization episode. Ms. James had a similar conversation with Ms. Pierce.[31]

20. On June 16, 2015, Ms. Pierce sent an email to Mr. Erkkila informing him that Ms. James had been scheduled to work at 9 a.m. and that Ms. Pierce had just received a call from Ms. James informing her that Ms. James would be late because her alarm did not go off.[32]

21. On June 18, 2015, Mr. Erkkila had a conversation with Ms. Tye-Critchley and informed her that Ms. James was not getting any better at her job, she kept showing up late, and that it was not working out. Ms. Tye-Critchley told Mr. Erkkila to go ahead and terminate her employment.[33]

---

[29] Motion at 7 ¶ 21; Opposition 15 ¶ 21 (Ms. James does not dispute that the request for FMLA leave was denied and provides a clarification of dates when the denial letter was drafted, sent, and received.); Reply at 14–15 ¶ 21 (West Valley City does not dispute these dates.).

[30] Opposition at 17–18 at ¶ 25; Reply at 17 ¶ 25 (Undisputed that this conversation occurred.).

[31] Opposition at 15 ¶ 21; Reply at 14–15 ¶ 21 (West Valley City does not cite to evidence disputing these conversations.).

[32] Motion at 8 ¶ 24; Opposition at 17 ¶ 24 (Ms. James does not dispute that she was late to work that day for the reason specified).

[33] Motion at 8 ¶ 25; Opposition at 17–18 ¶ 25 (The evidence cited does not create a dispute of fact.).

22. Mr. Erkkila testified that he made the decision to terminate Ms. James's employment on June 18, 2015.[34]

23. When asked about his decision, Mr. Erkkila outlined numerous incidents regarding Ms. James's substandard job performance, including, but not limited to, the following:

   a. Ms. James served alcohol to a minor;

   b. Ms. James was often late to work, which was personally witnessed by Mr. Erkkila, who discussed this issue with her;

   c. Ms. James failed to complete her job duties;

   d. Ms. James was slow on getting orders out and she had an issue where she did not prepare a proper inventory for the kitchen but simply copied the previous month's inventory, which Mr. Erkkila talked to her about personally;

   e. Mr. Erkkila discussed with Ms. James issues related to the fryers and not getting things done in general; and

   f. On one specific occasion Mr. Erkkila recalled working with Ms. James when he told her to put the food for a banquet in the oven at a specific time and Ms. James did not put the food in the oven as requested.[35]

24. On June 20, 2015, Ms. Pierce sent an email to Mr. Erkkila informing him that Ms. James was scheduled to come in and work at 6:30 a.m. but that she did not come in until 7:10 a.m.[36]

---

[34] Motion at 9 ¶ 27; Opposition at 19 ¶ 27 (the evidence cited does not create a dispute of fact.).

[35] *Id.*

[36] Motion at 10 ¶ 30; Opposition at 21–22 ¶ 30 (the evidence cited does not create a dispute of fact that Ms. James came into work late on June 20, 2015.).

8

25. When she arrived at the Ridge that day, Ms. James told Ms. Pierce that she "need[s] to take FMLA. [Ms. James's son] is seriously sick again. So [she] need[s] FMLA."[37]

26. That same day, Mr. Erkkila sent an email to his supervisor, Mike Richards ("Mr. Richards") wherein Mr. Erkkila informed Mr. Richards that he had spoken with Ms. Tye-Critchley on Thursday and received the go ahead to terminate Ms. James. Mr. Erkkila also explained to Mr. Richards that Ms. James had again shown up late for work.[38]

27. Kevin Astill, the department head, authorized Mr. Erkkila to terminate Ms. James after consulting with the Human Resource Office.[39]

28. Ms. James made a second written request to Ms. Jore for FMLA leave on June 20, 2015.[40]

29. When Ms. James was informed that Ms. Jore was out of town, Ms. James contacted Ms. Tye-Critchley on June 21 about getting the necessary FMLA paperwork. Ms. Tye-Critchley responded that the paperwork had previously been sent to Ms. James.[41]

30. Based on the decision that had been made on June 18, 2015, to terminate Plaintiff's employment, Mr. Erkkila and Ms. Pierce met with Ms. James on June 22, 2015, and Mr. Erkkila informed Ms. James that she was being terminated, that she was at-will, and it was

---

[37] Opposition at 16 ¶ 11; Reply at 24 ¶ 11 (West Valley City does not dispute that Ms. James informed Ms. Pierce of this and alerted Ms. Pierce for the potential need for family medical leave).

[38] Motion at 10 ¶ 31; Opposition at 22 ¶ 31 (Undisputed that this e-mail was sent).

[39] Reply at 5 ¶ 4, 17 ¶ 25. Although Ms. James filed an objection to the declaration of Mr. Astill that was attached to the Reply and cited at the specified paragraphs, the objection focused on the *content* of one specific paragraph of the declaration. *See* Plaintiff's Objections to the Declarations of Kevin Astill ("Objection") at 2–3, docket no. 31 filed February 13, 2018. Because that paragraph was not cited in the Reply, the objection was overruled. *See* Memorandum Decision and Order Overruling [31] Plaintiff's Objections to the Declaration of Kevin Astill at 1–2, docket no. 33, filed March 23, 2018. Notably, Ms. James did not object that the declaration was attached to the Reply and cited as new factual support therein. *See* Objection at 23. Ms. James also did not request the opportunity to file a sur-reply. *See id.* Because of this, the fact is undisputed for purposes of resolving the Motion.

[40] Motion at 10 ¶ 32 (undisputed).

[41] Motion at 11 ¶ 33 (undisputed).

not working out. Mr. Erkkila gave Ms. James the opportunity to resign in lieu of termination so that she could receive full payment of all accrued PTO, earned comp time and unused holiday hours up to that calendar date.[42]

## DISCUSSION

The FMLA establishes that an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise any right provide under [the Act]."[43] "Any employer who violates [those provisions] shall be liable to any eligible employee affected" for damages.[44] The Tenth Circuit "recognize[s] two theories of recovery under [the FMLA]: an entitlement or interference theory . . . and a retaliation or discrimination theory . . . ."[45] "These two theories of recovery are separate and distinct theories that 'require different showings[,] differ with respect to the burden of proof,' and 'differ with respect to the timing of the adverse action.'"[46]

"To prevail on an [FMLA] interference . . . theory, [a] plaintiff must demonstrate: '(1) that [she] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with [her] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of [the employee's] FMLA rights.'"[47] Even if an employee proves that an employer interfered with the employee's FMLA rights, the FMLA "provides no relief unless the employee has been prejudiced by the violation."[48]

---

[42] Motion at 11 ¶ 34; Opposition at 22–23 ¶ 34 (the evidence cited does not create a dispute of fact).

[43] 29 U.S.C. § 2615(a)(1).

[44] 29 U.S.C. § 2617(a)(1).

[45] *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

[46] *Dalpiaz v. Carbon Cty., Utah*, 760 F.3d 1126, 1131 (10th Cir. 2014) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

[47] *Metzler*, 464 F.3d at 1180 (quoting *Jones v. Denver Pub. Schs.*, 427 F.3d 1315, 1319 (10th Cir. 2005)).

[48] *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 82 (2002).

A plaintiff establishes a prima face case of retaliation under the FMLA if the employee shows that: "(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action."[49] "Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."[50] Meaning that if a plaintiff establishes a prima face case of retaliation, "then the defendant must offer a legitimate, non-retaliatory reason for the employment action."[51] "The plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual."[52]

West Valley City argues that summary judgment is appropriate on Ms. James's interference theory of recovery because Ms. James was not prejudiced by the denial of her April 2015 request for family medical leave;[53] the termination decision was independent of Ms. James's request for family medical leave;[54] and West Valley City had adequate grounds to terminate her employment in June 2015.[55] As to the retaliation claim, West Valley city argues that Ms. James fails to make a prima facie case because she cannot show a causal connection between her request for family medical leave and her June 2015 termination;[56] that West Valley

---

[49] *Metzler*, 464 F.3d at 1171.

[50] *Id* at 1170.

[51] *Id*.

[52] *Id.*

[53] Reply at 29–30.

[54] Motion at 17–18.

[55] *Id.* at 18–20.

[56] *Id.* at 21–22.

City had legitimate, nonretaliatory reasons for terminating Ms. James's employment;[57] and that Ms. James cannot show that those reasons were pretextual.[58]

Ms. James's interference recovery theory will be analyzed first, followed by analysis of her retaliation recovery theory. As detailed in the following sections, the undisputed facts demonstrate that Ms. James cannot recover under either theory.

**1. West Valley City Did Not Interfere With Ms. James's Request for Family Medical Leave**

The allegations in Ms. James's complaint supporting recovery under an interference theory focus on the denial of her April 2015 request for family medical leave.[59] Ms. James argues that her interactions with Ms. Pierce and Ms. Jore that month amount to impermissible interference with rights available under the FMLA.[60] However, Ms. James also argues that the decision to terminate her employment in June 2015 represents interference.[61]

The denial of Ms. James's first request for FMLA leave and her later termination will be examined separately to determine if West Valley City interfered with Ms. James's exercise, or attempt to exercise, the rights provided to her under the FMLA. Because Ms. James has failed to carry specific components of her burden, while West Valley City has offered undisputed facts that support its burden, summary judgment in favor of West Valley City is appropriate on Ms. James's interference claim.

---

[57] *Id.* at 22–24.

[58] Reply at 34–40.

[59] Complaint at 4.

[60] Opposition at 36–38.

[61] *Id.* at 38.

### A. Ms. James has not shown that she was prejudiced by the actions of West Valley City regarding her April 2015 request for FMLA leave.

Determining whether the April 2015 conduct of the identified West Valley City employees amounted to interference is unnecessary because Ms. James has not offered specific facts showing that she was *prejudiced* by that conduct. The United States Supreme Court has explained the FMLA does not provide relief

> unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.[62]

Ms. James asserts that Ms. Pierce's response when Ms. James informed Ms. Pierce that Ms. James's son was in the hospital, and the subsequent advice to use paid time off or holiday pay to cover a family medically related absence both represent interference.[63] Ms. James also argues that Ms. Jore's mailing of FMLA paperwork to Ms. James's old address amounts to interference.[64] Finally, Ms. James contends that (after she received the letter from West Valley City denying her request for family medical leave) she decided to reapply for FMLA on a later date only after speaking with Ms. Jore, who told Ms. James that she had ample leave time available to use. According to Ms. James, because this conversation occurred at the same time that Ms. Jore and Mr. Erkkila were discussing potentially terminating Ms. James, Ms. Jore's advice amounts to interference.[65]

---

[62] *Ragsdale*, 535 U.S. at 89.

[63] *Id.* at 36–37.

[64] *Id.* at 37.

[65] *Id.* at 37–38.

However, as another federal circuit has held, "the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation."[66] Again, this is because the FMLA "provides no relief unless the employee has been prejudiced by the violation."[67] Other than the content of the text messages between Ms. Pierce and Ms. James on April 9, 2015, the facts provided—whether they were deemed material or not—offer little detail about how Ms. James managed the hospitalization of her son and her work obligations in April 2015. If anything, the facts regarding Ms. Jore advising Mr, Erkkila not to terminate Ms. James because of her pending FMLA request[68] suggest that West Valley City was careful *not* to interfere with that request. Absent additional facts that demonstrate *how* Ms. James was harmed by the purported interference, Ms. James cannot recover.

West Valley City first raised the argument that Ms. James failed to show prejudice in its Reply. Although Ms. James has not responded because the argument was first raised in the Reply, it is not be inappropriate to rely on West Valley City's argument in resolving the Motion given the circumstances. In *Beaird v. Seagate Tech, Inc.*, the Tenth Circuit held that "if the court relies on new materials or new arguments in a reply brief, it may not forbid the nonmovant from responding to these new materials."[69] Later, the same court clarified that it is not a violation of *Beaird* for a trial court to consider new material,[70] particularly if the nonmoving party "had plenty of opportunity to seek leave of the court to file a surreply but never attempted to do so."[71]

---

[66] *Allen v. Butler Cnty.. Comms.*, 331 F. App'x 389, 394 (6th Cir. 2009).

[67] *Ragsdale*, 535 U.S. at 82.

[68] Undisputed fact ¶ 18.

[69] 145 F.3d 1159, 1165 (10th Cir.1998)

[70] *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006).

[71] *Id.*

Ms. James *did* take issue with an aspect of West Valley City's Reply, but her resulting objection only focused on one specific paragraph of the declaration West Valley City attached to the brief.[72] Despite having notice of West Valley City's new argument and opportunity to request a sur-reply, Ms. James chose to object to the declaration attached to the reply rather than seek the opportunity to supply potential facts that would create a dispute on the issue of prejudice. As a consequence, Ms. James has failed to carry her persuasive burden showing that that West Valley City interfered with her request for FMLA leave in April 2015.

**B. Ms. James has not shown that the termination of her employment was related to her FMLA request and West Valley City has shown that she would have been terminated regardless of that request.**

In considering recovery under an FMLA interference theory based on employment termination, "[t]he critical inquiry [regarding the third element of a prima face claim], is whether [the plaintiff] has alleged and presented evidence that there is a causal connection between her termination and her exercise of FMLA rights . . . ."[73] In order to affirmatively demonstrate a causal connection, a plaintiff must present more than inferences, the employee must identify facts that establish that connection.[74]

In arguing that West Valley City's decision to terminate her employment represents interference, Ms. James does not provide citation to facts. Instead she offers that the list of purported evidence discussed in pretext section of her Opposition is "sufficient to deny the City's motion."[75] Even in looking at that section, citations to fact are minimal and those that are cited do not serve as evidence of a causal connection between Ms. James's request for FMLA leave

---

[72] Objection at 23.

[73] *Metzler*, 464 F.3d at 1181.

[74] *Olson v. Penske Logistics, LLC,* 835 F.3d 1189, 1193 (10th Cir. 2016).

[75] Opposition at 38.

and her termination. She has not demonstrated a causal connection between the termination of her employment and her request for FMLA leave.

But even if Ms. James did present evidence of a causal connection and successfully established a complete prima facie claim of interference, the undisputed facts show that West Valley City still prevails on the claim. As the Tenth Circuit has explained, "[u]nder FMLA, an employee who requests leave or is on leave has no greater rights than an employee who remains at work."[76] "For this reason an employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting the request."[77]

West Valley City has demonstrated that Ms. James "would have been dismissed regardless of [her] request for, or taking of, FMLA leave."[78] Ms. James's performance as an employee was questioned from the start of her employment,[79] and her termination was discussed at various junctures, including before she made her family medical leave requests.[80] Indeed, the decision to terminate her employment was already being discussed in June for reasons unrelated to her first request for family medical leave and prior to her second.[81] Because of this, Ms. James cannot recover for interference and summary judgment in favor of West Valley City on the claim is appropriate.

---

[76] *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998).

[77] *Id.*

[78] *Sabourin v. Univ. of Utah*, 676 F.3d 950, 958 (10th Cir. 2012) (quoting *Metzler* 464 F.3d at 1180).

[79] Undisputed facts ¶¶ 4–6.

[80] *Id.* ¶¶ 6, 10, 18, and 22.

[81] *Id.* at 22.

## 2. Ms. James Fails to Make a Prima Facie Case that West Valley City Retaliated Against Her for Requesting Family Medical Leave.

As to the second theory of recovery detailed in the Complaint, Ms. James alleges that West Valley City retaliated against her for seeking FMLA leave by terminating her employment.[82] Again, the burden is on Ms. James to mount a prima facie case demonstrating that "'(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.'"[83] Only after Ms. James successfully shows these elements does the burden shift to West Valley City under a *McDonnell Douglas* analysis.[84] Similar to claims of interference, the "critical inquiry" at this prima facie stage of a retaliation claim is "whether the plaintiff has demonstrated that the [employer's] action occurred under circumstances which give rise to an inference of unlawful discrimination."[85]

In arguing for summary judgment, West Valley City does not appear to dispute that Ms. James's request for FMLA leave is a protected activity and that terminating her employment would be considered adverse by a reasonable employee. West Valley City focuses its argument on the "critical inquiry" of whether Ms. James has demonstrated casual connection.[86]

Despite acknowledging the focus of West Valley City's argument,[87] Ms. James appears to be more concerned with the pretextual prong of *McDonnell Douglas*. Absent a showing of the required prima facie elements of retaliation, arguing pretext is premature.

---

[82] Complaint at ¶ 31.

[83] *Metzler*, 464 F.3d at 1171.

[84] *Sabourin*, 676 F.3d at 958.

[85] *Id.*

[86] Motion at 21.

[87] Opposition at 33.

17

In responding to West Valley City's argument that she failed to show a prima facie case, Ms. James offers a timeline of events beginning with Ms. James's notification to Ms. Pierce on April 8, 2015, that Ms. James's son was in the hospital and culminating with her attempts to obtain new FMLA paperwork from West Valley City Human Resources on June 20 and 21, 2015. (This timeline also includes factual citation[88] to an event—on June 17, 2015, when Ms. James informed Ms. Pierce that she was late for work because her son was experiencing kidney issues again[89]—that was not specifically offered in response to West Valley City's statement of facts or offered in Ms. James's statement of additional facts.)[90] However, following that timeline of events, Ms. James states "in this case there is more than enough circumstantial evidence to infer that the decision-makers knew of James'[s] [protected] request for leave in June 2015." That statement is supported by a reference to case law discussing the 'cat's paw' theory of liability[91] which is pertinent *only at the pretextual stage* of a retaliation argument.[92]

By focusing on pretext, Ms. James's argument entirely bypasses the requirement to show a causal connection. Despite reciting a timeline of events, Ms. James does not argue that it is reasonable to infer a causal connection based on the timing of those events. The Tenth Circuit has held that the inference is permissible when the period between an FMLA request and termination is only one and one half months.[93] But it has also held that a three-month period

---

[88] Opposition at 34 n. 160.

[89] Opposition at 34.

[90] A fact like this that appears in argument and is not provided in a nonmovant's responses to fact or additional statements of fact violates DUCivR 56-1. Because Ms. James failed to comply with DUCivR 56-1, this fact is not included in the prior statement of undisputed facts, and is not considered in the resolution of the Motion.

[91] *See* Opposition at 34 n. 165.

[92] *See Llamas v. QC Fin. Servs., Inc.,* 621 F. App'x 906, 913 (10th Cir. 2015) (acknowledging that in FMLA cases when "nothing in the record suggests [a defendant] acted with discriminatory intent, [a plaintiff] must rely upon a claim of 'cat's paw' or 'subordinate bias' liability.")

[93] *Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994).

between these events does not permit such an inference.[94] The facts here present a time period between those limits, but again, Ms. James failed to argue, with citation to relevant facts, that it is reasonable to infer causation between her request and the termination in this time period.[95] It is not a trial court's responsibility to "collect, organize, and articulate the cumulative legal significance of pertinent items . . . with respect to each of [a plaintiff's] various claims."[96] And even if Ms. James had argued that the timeframe between her request and termination permits the inference of causation, that inference would not reasonable. It is undisputed that Ms. James's superiors discussed terminating her employment well before her request for family medical leave.[97]

Ms. James has therefore failed to show causation and has not shown a prima facie case of retaliation that would permit consideration of the remaining *McDonnell Douglas* prongs. Summary judgment in favor of West Valley City on Ms. James's retaliation theory of recovery is appropriate.

---

[94] *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997).

[95] It should be noted that Ms. James was aware of this very issue, as she touches on it the context of supporting her argument that West Valley City's reasons for terminating her are pretextual. *See* Opposition at 40. But the reasoning there is not is not used in any way to show her prima facie case.

[96] *Schaede v. Boeing Co.*, 72 F.3d 138, 138 (10th Cir. 1995).

[97] Undisputed facts ¶¶ 6, 10.

**ORDER**

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment[98] is GRANTED.

The clerk of the court is directed to close the case

Signed March 22, 2018.

BY THE COURT

David Nuffer
United States District Judge

---

[98] Motion, docket no. 18.